612 F.2d 1202
 Judith Katherine EXNER, Plaintiff-Appellant,
v.
FEDERAL BUREAU OF INVESTIGATION, William H. Webster,
Director, Federal Bureau of Investigation, United States,
United States Department of Justice and Griffin B. Bell,
Attorney General of the United States, Defendants-Appellees.
Judith Katherine EXNER, Plaintiff-Appellee,
v.
FEDERAL BUREAU OF INVESTIGATION, William H. Webster,
Director, Federal Bureau of Investigation, United States,
United States Department of Justice and Griffin B. Bell,
Attorney General of the United States, Defendants-Appellants.
 Nos. 78-1152, 78-1880.
 United States Court of Appeals,
Ninth Circuit.
 Feb. 4, 1980.
 
 Richard C. Leonard, Beverly Hills, Cal., for appellant.
 Linda M. Cole, Dept. of Justice, Washington, D. C., argued, Leonard Schaitman, Washington, D. C., on brief, for appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before GOODWIN, WALLACE and PREGERSON,* Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 Judith Katherine Exner sued the Federal Bureau of Investigation under the Freedom of Information Act, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, to obtain access to the information about her in the Bureau's files. While the case was pending in the district court, and during the time consumed by an earlier appeal to this court,[1] the FBI released to Mrs. Exner some 86 documents, in whole or part, of a total of 92 documents identified by the FBI as responsive to her request. The district court denied Mrs. Exner's request for an order to produce the remaining six documents, but allowed her attorney's fees and costs upon a finding that she had "substantially prevailed" under the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E). Both parties appeal.
 
 
 2
 The factual background of the case has been published in the decisions cited in the margin. The legal questions are (1) whether Mrs. Exner, whose appeal is not based on the FOIA, is entitled under the Privacy Act to disclosure of certain remaining documents in the possession of the FBI; and (2) whether the district court properly awarded Mrs. Exner attorney's fees and costs under the FOIA.
 
 
 3
 Both the FOIA and the Privacy Act provide for access to records maintained by agencies of the United States. The FOIA contemplates public access to any and all records not exempt from disclosure. The Privacy Act provides for access by an individual to government records concerning that individual and not exempt from access under specified circumstances.
 
 
 4
 The trial court, before granting summary judgment, examined the unreleased documents in chambers as a court may do under the FOIA (5 U.S.C. § 552(a)(4) (B)). A more limited procedure appears in the Privacy Act. (5 U.S.C. § 552a(g) (3)(A)).
 
 
 5
 After the examination pursuant to the FOIA, the trial court made findings which, under both the FOIA and Privacy Acts, made the contested documents exempt from release to anyone not authorized by the FBI to see them.
 
 
 6
 The court accordingly ruled that Mrs. Exner was entitled to no further releases of documents under either statute. Her appeal challenges only the court's interpretation of the Privacy Act. Technically, therefore, we have no need to consider the FOIA further, except as that statute provided the basis for the court's award of attorney fees. The FOIA is, however, tied into the Privacy Act in certain of Mrs. Exner's arguments on appeal, and therefore will be considered in that connection.
 
 I. THE PRIVACY ACT
 
 7
 Subsection 552a(d) of the Privacy Act permits an individual[2] to gain access to those records[3] which pertain to him and are found in a system of records[4] maintained by an agency.
 
 
 8
 Having given general access to the individual in 552a(d), Congress in subsection 552a(j)(2) denied access to any system of records which is "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws * * * and which consists of * * * (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual * * *."
 
 
 9
 To exempt a system of records from access under the Privacy Act, an agency must, first, promulgate rules, pursuant to the rulemaking requirements of 5 U.S.C. §§ 553(b)(1), (2), and (3), (c) and (e), and, second, state the reasons in the rule itself why the system of records is to be exempt from a provision of the Act. 5 U.S.C. § 552a(j). The Justice Department takes the position that it has fully complied with both requirements. See 28 C.F.R. § 16.91. The trial court agreed, and we affirm.
 
 
 10
 In her amended complaint, Mrs. Exner indicated that she sought access under the Privacy Act because, once she obtained access to her records, the Privacy Act would give her the opportunity to correct what she believed to be inaccurate information in the FBI's files. She contends on appeal that if she cannot inspect the remaining FBI records not previously released to her she cannot correct them. This is true, but it is not necessarily controlling. First, she must establish the right to see the withheld records.
 
 
 11
 The scope of our review of the district court's decision exempting 6 of the 92 documents from disclosure is two-sided. First, we agree that the trial court's perception of the facts withstands review under Fed.R.Civ.P. 52. The trial court found, as a fact, that the withheld documents were part of a criminal investigation report in an exempt system of records. This finding is virtually conceded. Next, we must decide whether the trial court applied the correct legal standard.
 
 
 12
 The only Privacy Act exemption cited by the district court is the one contained in section 552a(j)(2)[5].
 
 
 13
 The Department of Justice regulations found in 28 C.F.R. § 16.96 activate the exemptions with respect to four different systems of records: the Central Records System, the Electronic Surveillance Indices, the Identification Division Records System, and the National Crime Information Center. While the trial court's findings do not so specify, the information concerning Mrs. Exner was apparently all found in the Central Records System.
 
 
 14
 Regulation § 16.96(a) provides that the Central Records System is exempt from subsection 552a(d) "to the extent that information in this system is subject to exemption pursuant to 5 U.S.C. § 552a(j) or (k)."[6] The regulation gives as reasons for these exemptions:
 
 
 15
 "(I)ndividual access to records * * * might compromise ongoing investigations, reveal investigatory techniques and confidential informants, and invade the privacy of private citizens who provide information in connection with a particular investigation. In addition, exemption * * * is necessary to protect the security of information classified in the interest of national defense and foreign policy." 28 C.F.R. § 16.96(b)(2).
 
 
 16
 The district court correctly ruled that the (j)(2)(B) exemption, as implemented by 28 C.F.R. § 16.96(a) and (b)(2), precludes Mrs. Exner from obtaining any further disclosure of the information pertaining to her that has been withheld as exempt.
 
 
 17
 On the face of the (j)(2)(B) exemption and the accompanying regulation, Mrs. Exner was not entitled to disclosure of any of the information concerning her that appears in the FBI files. All the information on Mrs. Exner was contained in criminal investigatory files located in the Central Records System, and regulation section 16.96(a) has activated the (j)(2)(B) exemption with respect to the Central Records System.[7]
 
 
 18
 Mrs. Exner contends, however, that the district court relied solely on the FOIA, and ignored the Privacy Act, when it ruled that the government could properly withhold those documents and portions of documents it has not voluntarily turned over to Mrs. Exner. She is wrong. The "Memorandum and Order Granting Motion for Summary Judgment" demonstrates that the district court did in fact consider the Privacy Act and did find that Mrs. Exner was not entitled to any further disclosure under the Privacy Act or under the FOIA.
 
 
 19
 Mrs. Exner argues here that the Privacy Act's investigatory records exemption, set forth at subsection 552a(j)(2)(B), should be construed in her case as coextensive with the FOIA's investigatory records exemption, set forth in subsection 552(b)(7).[8] We need not decide in this case whether the Privacy (j)(2)(B) exemption exempts more information from disclosure than does FOIA (b) (7). Upon any reading of either statute, Mrs. Exner has already received at least as much information as she has a statutory right to demand. Accordingly, we can reserve until a time when a case turns upon the question whether her theory is sound.[9]
 
 
 20
 On oral argument a question was raised whether the Privacy Act entitles Mrs. Exner to further disclosure on another ground: given that the information at issue is contained in a system of records (the Central Records System) that may be totally exempted from access under subsection 552a(j)(2)(B) to the extent that it contains criminal investigatory files, and given that the FBI has promulgated a regulation, 28 C.F.R. § 16.96(a), that nominally activates the exemption, may the FBI nevertheless not withhold the information at issue unless the reason for withholding is consistent with one of the reasons listed in subsection 16.96(b)(2) for exempting the Central Records System from the application of the access provisions? The question, then, is whether the reasons given in the regulation limit the exemption.
 
 
 21
 As noted earlier, Privacy Act subsection 552a(j) requires an agency to specify "the reasons why the system of records is to be exempted" when it promulgates a regulation exempting the system from the access provisions. The Privacy Act does not indicate the purpose or effect of this requirement. Nor does the statute state that once the agency has promulgated the regulation activating the (j)(2)(B) exemption, the agency may withhold information only if the reason for withholding is consistent with one of the reasons listed in the implementing regulation. We find it unnecessary at this time to explore the meaning of legislative silence on this point because the district court found that the material here had been withheld for reasons consistent with those set out in the implementing regulation. The disputed documents were, thus, exempt under any reading of the statute.
 
 
 22
 Under the Privacy Act, 5 U.S.C. § 552a(g)(3)(A), the court may conduct in camera proceedings only to determine whether the exemptions set forth in subsection (k) are applicable; the Privacy Act does not expressly give the court the right to look at the records to determine whether the exemptions set forth in subsection (j) are applicable. Given this diverse treatment of the different exemptions, we decline to speculate whether Congress, by failing to provide expressly for review of (j)(2)(B) material, intended to preclude such review or merely overlooked the point. Whether or not, in this case, the district court had statutory authority to review any of Mrs. Exner's records, with respect to which the government was claiming the (j)(2)(B) exemption, to determine whether the government's reasons for withholding those records are consistent with the reasons listed in 28 C.F.R. § 16.96(b)(2) for exempting the Central Records System from the access provisions, the court did examine the documents and concluded that they were exempt.
 
 
 23
 This conclusion leaves only the question of attorney's fees under 5 U.S.C. § 552(a)(4)(E).
 
 II. ATTORNEY'S FEES
 
 24
 The plaintiff's right to attorney's fees and costs cannot be considered apart from the procedural history of the case. The decision whether to award attorney's fees under 5 U.S.C. § 552(a)(4)(E) is within the discretion of the district court. Cox v. United States Department of Justice, 195 U.S.App.D.C. 189, 601 F.2d 1 (D.C.Cir., 1979). The trial court, in which this litigation flourished for several years, made specific findings that withstand review under Fed.R.Civ.P. 52, to the effect that Mrs. Exner "substantially prevailed" under her FOIA claim. The record supports both the findings and the court's conclusions.
 
 
 25
 Affirmed.
 
 PREGERSON, Circuit Judge (concurring):
 
 26
 As I read the district court's Memorandum and Order Granting Motion for Summary Judgment, Judge Schwartz correctly treated the investigatory records exemptions found in the Freedom of Information Act (FOIA) and the Privacy Act as coextensive. In my view, a coextensive reading of these exemptions is required to effectuate the purposes of both acts. Both the FOIA and the Privacy Act contain provisions under which a party may gain access to records maintained by agencies of the United States. Under the FOIA, an individual may gain access to nonexempt records, whether or not the records pertain to him or her. Under the Privacy Act, an individual may gain access to nonexempt records only if they concern him or her. Thus, an individual may obtain documents pertaining to him or her under both acts. It makes good sense, then, that parties should have the same access to records pertaining to them under the Privacy Act as they would have under the FOIA. In this way, the disclosure purpose underlying both acts may be effectuated.
 
 
 27
 Under the FOIA, 5 U.S.C. § 552, agencies must release records to a requesting party unless those records fall within one of nine exemptions to disclosure set forth in § 552(b). The exemption at issue here is the investigatory records exemption contained in subsection (b)(7). That provision exempts investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would:
 
 
 28
 (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel . . . .
 
 
 29
 § 552(b)(7).
 
 
 30
 Under the FOIA, when an agency refuses to disclose requested documents by asserting the investigatory records exemption, the requesting party may challenge the claimed exemption in district court. The court may then examine the documents in camera to determine if the (b)(7) exemption does indeed apply. § 552(a)(4)(B). The agency bears the burden of demonstrating both that the documents are investigatory records compiled for law enforcement purposes and that at least one of the justifications for nondisclosure spelled out in (b)(7) applies.
 
 
 31
 The scope of the investigatory records exemptions in the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, is basically the same. Subsection (j)(2) (B) of the Privacy Act generally exempts from disclosure any system of records maintained
 
 
 32
 (B)y an agency . . . which performs as its principal function any activity pertaining to the enforcement of criminal laws . . . and which consists of . . . information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual . . . .
 
 
 33
 § 552a(j)(2)(B). To activate this exemption, however, an agency must promulgate rules in accordance with sections 553(b)(1), (2), and (3), (c), and (e) of the Administrative Procedure Act. Those rules must include a statement of reasons explaining why a system of records is exempt from the Privacy Act's disclosure provisions. § 552a(j).
 
 
 34
 Pursuant to § 552a(j), the FBI activated the Privacy Act's (j)(2)(B) investigatory records exemption by promulgating regulations in 28 C.F.R. § 16.96. These regulations set forth the following statement of reasons justifying the exemption:
 
 
 35
 (T)hese (disclosure) provisions concern individual access to records and such access might compromise ongoing investigations, reveal investigatory techniques and confidential informants, and invade the privacy of private citizens who provide information in connection with a particular investigation. In addition, exemption . . . is necessary to protect the security of information classified in the interest of national defense and foreign policy.
 
 
 36
 28 C.F.R. § 16.96(b)(2).
 
 
 37
 When an agency refuses to disclose the requested documents by asserting the Privacy Act's investigatory records exemption, the requesting party may challenge the claimed exemption in district court. The court is empowered to determine the matter de novo. § 552a(g)(3)(A). Unlike the FOIA, the Privacy Act does not expressly authorize in camera inspection of documents when an agency asserts the investigatory records exemption of subsection (j)(2)(B).
 
 
 38
 When one compares the (b)(7) exemption of the FOIA with the (j)(2)(B) exemption of the Privacy Act in conjunction with its activating regulations, the two schemes appear remarkably alike. Both schemes contemplate nondisclosure of documents for virtually identical reasons. For example, FOIA subsection (b)(7)(A) which authorizes nondisclosure if granting access to a document would "interfere with enforcement proceedings," is very similar to 28 C.F.R. § 16.96(b)(2), promulgated under the Privacy Act, which justifies denial of access to a document where disclosure would "compromise ongoing investigations." Furthermore, the considerations concerning the protection of national security, investigative techniques, personal privacy, and identity of confidential sources in subsections (b)(7)(C), (D), and (E) of the FOIA are mirrored in the Privacy Act's regulations at § 16.96(b)(2). Since the considerations regarding investigatory records are the same in both statutory schemes, when a request for access to documents is made under both acts, the most reasonable way to correlate the statutes would be to read the exemptions coextensively.
 
 
 39
 Additional support for a coextensive reading of the two exemptions is found in the Office of Management and Budget Guidelines to the Privacy Act, 40 Fed.Reg. 28,949 (July 9, 1975) and Supplementary Guidelines, 40 Fed.Reg. 56741 (December 4, 1975). The Privacy Act charges the OMB with the task of devising guidelines for the implementation of the Act. § 552a note. These guidelines state:
 
 
 40
 When a request specifies, and may be processed under both the FOIA and the Privacy Act, or specifies neither Act, Privacy Act procedures should be employed. The individual should be advised, however, that the agency has elected to use Privacy Act procedures, of the existence and the general effect of the Freedom of Information Act, and of the difference, if any, between the agency's procedures under the two Acts (e. g., fees, time limits, access and appeals).
 
 
 41
 The net effect of this approach should be to assure that individuals do not, as a consequence of the Privacy Act, have less access to information pertaining to themselves than they had prior to its enactment.
 
 
 42
 Supplementary Guidelines, 40 Fed.Reg. at 56743. The thrust of the OMB Guidelines is clear: they give the requesting individual the benefits of both acts. Thus, in keeping with the spirit of the OMB Guidelines, a coextensive reading of the two investigatory records exemptions would assure that individuals do not, as a consequence of the Privacy Act, have less access to information pertaining to themselves than they had under the earlier enacted FOIA.
 
 
 43
 In reading the exemptions coextensively, the question arises whether the court should allow an agency to claim the Privacy Act's investigatory records exemption only if release of material in the particular record would have one of the adverse effects set forth in the statement of reasons at 28 C.F.R. § 16.96.[1] The Fourth Circuit recently upheld a denial of access under the Privacy Act where the reason for withholding the document was consistent with at least one of the adverse effects listed in the statement of reasons. Ryan v. Department of Justice, 595 F.2d 954, 957 (4th Cir. 1979). The Privacy Act does not expressly authorize in camera inspection by the district court of records purportedly exempt under subsection (j). This silence should not be construed to mean that Congress intended to preclude inquiry into whether release of material in the records would result in one of the adverse effects set forth in the statement of reasons. For a court to uphold an asserted investigatory record exemption without inquiring into whether the information in the document justifies the exemption would make judicial review meaningless.
 
 
 44
 Moreover, although Congress did not expressly authorize in camera review of investigatory records falling within the Privacy Act's (j) exemption, Congress did, nonetheless, authorize the district court both to enjoin an agency from improperly withholding records and to order the production of such records after a de novo determination. § 552a(g)(3)(A).[2] Implicit in that authorization of de novo review is the power to examine the questioned document because " 'de novo' means trying the matter anew, the same as if it had not been heard before and as if no decision had been previously rendered." Farmingdale Supermarket, Inc. v. United States, 336 F.Supp. 534, 536 (D.C.N.J.1971). Without the power of inspection, de novo review would be an ineffective remedy. In other words, in camera inspection is mandated because (1) de novo review is meaningless without it and (2) it is the only way a court can determine that the claimed exemption complies with the statement of reasons requirement set forth in § 552a(j).
 
 
 45
 For the foregoing reasons, I conclude that the investigatory records exemptions under the two acts should be read coextensively. Judge Schwartz did just that. I vote to affirm.
 
 
 
 *
 The Honorable Harry Pregerson, now a member of this court, was United States District Judge for the Central District of California, sitting by designation when this case was submitted
 
 
 [1]
 See Exner v. Federal Bureau of Investigation, 443 F.Supp. 1349 (S.D.Cal.1978), and Exner v. Federal Bureau of Investigation, 542 F.2d 1121 (9th Cir. 1976)
 
 
 [2]
 Subsection 552a(d) provides in part:
 "(1) (U)pon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made * * *."
 
 
 [3]
 The term "record" is defined in subsection 552a(a)(4) as follows:
 " * * * (A)ny item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph * * *."
 
 
 [4]
 The term "system of records" is defined in subsection 552a(a)(5) as follows:
 " * * * (A) group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual * * *."
 
 
 [5]
 "Records * * *
 "(2) (M)aintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision."
 
 
 [6]
 On appeal, the government also relies on the exemption contained in § 552a(k)(2). It provides that an agency head may exempt from the access and amendment requirements a system of records that contains:
 "(2) (I)nvestigatory material compiled for law enforcement purposes, other than material within the scope of subsection (j)(2) of this section: Provided, however, That if any individual is denied any right, privilege, or benefit that he would otherwise be entitled by Federal law, or for which he would otherwise be eligible, as a result of the maintenance of such material, such material shall be provided to such individual, except to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence * * *."
 It is not necessary in this case to consider this exemption, and we decline to do so.
 
 
 [7]
 We do not express an opinion on the documents disclosed earlier under the FOIA during the course of the litigation. The government has not raised the issue on appeal, and it is moot in any event
 
 
 [8]
 "(b) This section does not apply to matters that are
 "(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record complied by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel; * * *."
 
 
 [9]
 The version of the Privacy Act that originally passed the Senate contained a single exemption concerning access to investigative records. That exemption, by design, was identical to the FOIA's (b)(7) exemption as amended, except that it also provided that investigative information could not be exempted where the information had been maintained for a period longer than necessary to begin criminal prosecution. 120 Cong.Rec. 36917, 36920, 36891 (1974) (§ 203(b) of the Senate version). The House version, passed the same day (November 21, 1974), contained the (j)(2)(B) and (k)(2) exemptions that appear in the Privacy Act, except the House version did not require an agency to set forth in the implementing regulations the reasons why a system of records was to be exempted. Id. at 36654, 36962, 36976. The House bill was also significantly different from the Senate bill in other ways. Pressed for time, the members and staffs of the relevant House and Senate committees informally negotiated a compromise between the two versions. The compromise retained the basic thrust of the House measure but also included important segments of the Senate bill. Id. at 40400, 40880. The House then passed the Senate bill, amending it by substituting the language of the House measure. Id. at 39204. The Senate bill, as amended by the House, was presented to the Senate together with amendments incorporating the compromises. Id. at 40397-405. The compromise measure adopted the investigatory records exemptions contained in the House bill, I. e., it adopted the (j)(2)(B) and (k)(2) exemptions. The Senate version, which tracked the FOIA's (b)(7) exemption, was dropped. Added to the House version, however, was the requirement that regulations implementing the exemptions set forth the reasons why the exemptions were to be invoked. Id. at 40402-03. The Senate accepted the compromise, Id. at 40413; the House accepted the compromise with technical amendments, Id. at 40880, 40886; the Senate concurred in the amendments, Id. at 40730; and the Privacy Act was presented to the President and was signed
 
 
 [1]
 This question does not arise under the FOIA because subsection (b)(7) expressly requires that a reason supporting the exemption exist. See also Epstein v. Resor, 421 F.2d 930, 933 (9th Cir.), Cert. denied 398 U.S. 965, 90 S.Ct. 2176, 26 L.Ed.2d 549 (1970)
 
 
 [2]
 § 552a(g)(3)(A) provides, in pertinent part:
 In any suit brought under the (access) provisions of subsection (g)(1)(B) of this section, the court may enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him. In such a case the court may determine the matter de novo, and may examine the contents of any agency records in camera to determine whether the records or any portion thereof may be withheld under any of the exemptions set forth in subsection (k) of this section, and the burden is on the agency to sustain its action.
 (Emphasis added.) The Privacy Act debates are silent as to why subsection (j) was omitted from this provision. See 120 Cong.Rec. 36655 (1974) (remarks of Rep. Moorhead), Reprinted in Legislative History of the Privacy Act of 1974 (Sourcebook on Privacy), at 908 (1976).