Georgia ANDREWS; Erin Brett; Frances E. Cassle; B.J. Durham; Maureen Engert; Mary Fox; Maxine Griffin; Betty Grubb; Ruth Holmes; Lucille Hoppe; Dorothy Homyak; Sharon K. Kaiser; Chandra K. Lillemoen; Carolyn O'Brien; Deloris O'Brien; Mary Jane Prysock; Laura Russell; Laura Scherr; Joan Schick; Brenda Schulz; Victoria Smith; Kathryan Toulouse; Margaret Wickham; Norman Wilde; and all others similarly situated, Plaintiffs

v.

VETERANS ADMINISTRATION, OF the UNITED STATES of America and the Veterans Administration Medical Center of Cheyenne, Wyoming, Defendants.

No. C84–0459–B.

United States District Court,
D. Wyoming.

July 17, 1985.

Donald W. Riske and Warren R. Darrow, Cheyenne, Wyo., for plaintiffs.

Henry T. Jones, Dist. Counsel, Veterans Admin., David A. Kern, Asst. U.S. Atty., Cheyenne, Wyo., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BRIMMER, District Judge.

This matter came on regularly for trial to the Court on June 13 and 14, 1985, the Honorable Clarence A. Brimmer, United States District Judge for the District of Wyoming presiding. Counsel appearing were Donald W. Riske, Esq., and Warren R. Darrow, Esq., for plaintiffs, and Henry T. Jones, Esq., counsel for the Veterans Administration, and David A. Kern, Esq., Assistant United States Attorney, for defendant. The Court has reviewed the pleadings, considered the arguments of counsel, the views of Local 1014 of the American Federation of Government Employees set forth in its Amicus Curiae Brief, has reviewed the exhibits submitted, and considered the testimony presented at trial, and being fully advised in the premises makes its Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

Plaintiffs are registered nurses employed by defendant, Veterans Administration, at its Medical Center located in Cheyenne, Wyoming. They bring this action under the Privacy Act of 1974, 5 U.S.C. § 552a(g), requesting injunctive relief and damages in the amount of $1,000.00 per plaintiff, alleging defendants released personnel records in an improperly sanitized condition, so that the identity of plaintiffs could be determined from the information released. Plaintiffs contend such files contained sensitive information, including evaluations of job performance, the release of which constituted clearly unwarranted invasions of plaintiffs' personal privacy, that the release was not compelled under exemption six of the Freedom of Information Act, 5 U.S.C. § 552(b)(6), and that the release was in violation of plaintiffs' rights under the Privacy Act, 5 U.S.C. § 552a.

The dispute which culminated in this suit began on June 4, 1984 when Patricia Sanchez, President of Local 1014, American Federation of Government Employees, the exclusive bargaining agent for nurses at the Medical Center, including plaintiffs, made a written request for release to her of the proficiency reports of all of the registered nurses employed at the Center. Just after she made this request Mrs. Sanchez, on June 5, 1984, filed a grievance on her own behalf because she failed to receive a requested promotion in the C Ward at the Center. However, Mrs. Sanchez' request was not limited to reports relating to the successful candidates for promotions in the C Ward, or to the time in question, but rather related to all registered nurses in all wards and covered a period of three years. The initial request stated no reason concerning why the union sought access to this sensitive information.

The Proficiency Reports are a means of evaluation of job performance and abilities of registered nurses employed at the Center. The report is prepared on a standard form, containing two pages. The first page contains various numerical ratings for factors such as integrity, emotional stability, dependability, and interpersonal relations. An overall numerical score is assigned, as well as a rating of the individual's capacity for advancement. The second page contains a narrative discussion of the individual's performance during the relevant period, areas of advancement, strengths and weaknesses, and other similar matters. It is beyond doubt that the information in the proficiency reports is sensitive in nature, and release of this information, if identifying information were not adequately deleted, would result in embarrassment of the persons to which they pertain.

Mrs. Sanchez had previously sought, and obtained, release of proficiency reports pertaining to one or a few nurses at the Center in relation to specific grievances then pending, but each such release was obtained after she sought and obtained consent from the individual or individuals to which the reports pertained. In this instance she did not request consent from the nurses at the Center before making the request, and could not have obtained consent from plaintiffs, who vehemently ob-

jected to the release of their proficiency reports. Nor was the request made pursuant to any pending grievance. Mrs. Sanchez, acting alone, decided to review all proficiency reports to determine whether a grievance could or should be filed in relation to the manner in which the reports were prepared by management personnel. The reports were never used in relation to any grievance or other union-related activity subsequent to their release. Furthermore, the union membership had taken no official action to authorize Mrs. Sanchez to make such request or to file a grievance regarding the general issue of completion of the proficiency reports by Head Nurses.

Mrs. Sanchez's request of June 5, 1984 was received by Ms. Hazel Gilligan, who is the Chief of Personnel Services at the center, and is the custodian of the personnel files. Ms. Gilligan had received some training concerning her duties under the Privacy Act, and was supplied with a Federal Personnel Manual which contains guidelines for responses to requests for information contained in personnel files. Ms. Gilligan had never before been presented with a blanket request for personnel files, and she never had been requested to disclose such information without the consent of the individual to which the file pertained. Therefore, she consulted the provisions of the Personnel Manual in response to the request by Mrs. Sanchez. She then wrote a letter to Mrs. Sanchez, dated June 5, 1984, stating that, before a determination could be made as to the Union's entitlement to such records, a reason for the request had to be given. By letter dated June 7, 1984, Mrs. Sanchez responded by stating generally that the reports would be used in a grievance which the Union was considering filing, and in preparing for a labor/management meeting scheduled to be held later in the month of June.

Ms. Gilligan also sought guidance from the defendants' national office in Washington, D.C., but only discussed the matter with the Labor Relations Department, and did not consult with the legal department. She was informed that she was required to release the proficiency reports under 5 U.S.C. § 7114(b), but that she should sanitize the reports prior to their release so as to delete any identifying information. Ms. Gilligan had received no training regarding sanitizing personnel records, and received no assistance or guidance from the national office in this regard.

Between June 7, 1984 and June 19, 1984 Ms. Gilligan attempted to remove any identifying information from the approximately sixty reports to be released by making photocopies of the original reports and by using a black felt tip pen to black out any information which, in her judgment, might serve to identify the subject of the report. After completing this task she requested her assistant, Wanda Dykeman, to review the copies and delete any additional information which Dykeman felt might identify the subject of the report. However, Ms. Gilligan felt unqualified to detect all identifying information relating to the subjects of the reports, due to her lack of knowledge concerning information such as classes attended or conducted, committee assignments or chairmanships, outside activities, and the like. She therefore requested Mrs. June Wright, the Head Nurse at the Medical Center, to review the reports and to delete any additional identifying information prior to their release. After receiving back the sanitized reports from Dykeman and Wright, Ms. Gilligan briefly reviewed them, made photocopies, and produced these to Mrs. Sanchez on June 19, 1984. Among the reports so provided were reports pertaining to the plaintiffs in this action.

Between June 14 and June 19, 1984 Ms. Gilligan received several written objections to the release of the reports from plaintiffs and other nurses employed at the Medical Center, all requesting that their reports not be released. In response to these requests Ms. Gilligan, by letter dated June 20, 1984 to all nurses employed at the Medical Center, stated that "Management is required to release these documents under the provisions of PL–95–454, Section 7114." Such letter reassured the nurses that all of the reports released had been completely sani-

tized by members of the personnel office, with the assistance of the Chief Nurse, and included as an attachment a proficiency report pertaining to Laura Scherr in its sanitized condition, intended to show that identification of the subject of the report was not possible as sanitized. However, the report pertaining to Laura Scherr was not adequately sanitized, and several of her co-workers were able to identify her, based upon the information contained in the released report.

The record establishes that third parties acquainted with the following plaintiffs could, and did, recognize their identity through the information released in their proficiency reports: B.J. Durham, Mary Fox, Maxine Griffin, Betty Grubb, Ruth Holmes, Lucille Hoppe, Deloris O'Brien, Laura Russell, Laura Scherr, and Kathryan Toulouse. Indirect evidence adequately establishes that the identity of the following plaintiffs could be determined through the information released in their proficiency reports, though no third party did in fact so identify them: Diane Ingle, Carolyn O'Brien, Ada Shader, and Victoria Smith. In each of these instances the testimony offered was that the subject of the report could identify herself through the information released, but no direct evidence or testimony was offered to show that any third party could or did identify them through such information. However, a review of the reports themselves, as well as the other evidence in the record is adequate to lead to a logical inference that persons acquainted with such plaintiffs, including their co-employees, could readily identify their reports based upon the information released. No evidence was submitted to show that the information in the proficiency reports of the following plaintiffs was such as would enable any third party to identify the subject of the report: Frances Cassle, Dorothy Homyak, and Margaret Wickham. The testimony shows that each of the plaintiffs suffered some degrees of anguish, embarrassment, or other mental trauma as a result of the release of their proficiency reports, but none suffered any pecuniary loss. The evidence also indicates

that the release has adversely effected the proficiency reporting system at the Medical Center as a means of performance evaluations due to fear that the information contained in the reports may later be disclosed to third persons. Also, the working environment at the Medical Center was adversely effected by the release, and tensions and antagonism are more prevalent there since the information was released.

Hazel Gilligan acted conscientiously, in good faith, though inadvertently negligently, in releasing the proficiency reports in an inadequately sanitized condition. Her superiors in Washington, in failing to provide her with adequate training or guidance in relation to release of information covered by the Privacy Act, and in instructing her that release of the proficiency reports was compelled by 5 U.S.C. § 7114 were grossly negligent. The evidence is adequate to establish a willful or intentional violation of the Privacy Act, as that term has been defined by relevant cases, by the Washington personnel of the defendant. Ms. Gilligan requested a reason for disclosure from Mrs. Sanchez solely for the purpose of having information in her file to justify the release. She felt that she could not second guess the Union in determining whether release to aid in a pending or proposed grievance proceeding would be proper. She viewed her obligations under the Privacy Act as being limited to assuring the materials were fully sanitized before the release in a context where the Union has requested access to them. She did not attempt to balance the privacy interests of the subjects of the reports against the competing interests of the Union in obtaining the records, which interests were ambiguous and virtually undefined, and she never concluded that the Union's interests were adequate to override the privacy interests of plaintiffs. She felt that whenever the Union asks for information in the personnel files of employees it represents, when it is acting in a representative capacity, it should be given the records in sanitized form. She determined that the Union was entitled to receive the

information without having an adequate factual basis to determine whether the request was legitimate, or was necessary to the Union's attempts to represent the nurses at the Medical Center. She did not seek consents to the releases, and considered no alternatives to a blanket release of all reports requested, after attempts were made at sanitization. As a result the privacy interests of plaintiffs Durham, Fox, Griffin, Grubb, Holmes, Hoppe, Delores O'Brien, Russell, Scherr, Toulouse, Ingle, Carolyn O'Brien, Shader and Smith were violated.

## CONCLUSIONS OF LAW

The Court has jurisdiction over the subject matter of this action under 5 U.S.C. § 552a(g) and 28 U.S.C. § 1331, and venue is properly in the United States District Court for the District of Wyoming.

■ The Privacy Act of 1974, including 5 U.S.C. § 552a, provides:

No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains ... 5 U.S.C. § 552a(b).

The Act defines "system of records" to include:

... a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual. 5 U.S.C. § 552a(a)(5).

The personnel files relating to plaintiffs were "systems of records" covered by the Privacy Act of 1974, and the proficiency · reports were records contained within the system of records. 5 U.S.C. § 552a(a)(4).

The Privacy Act was adopted to protect the individual privacy of persons. The Congressional policy underlying the Act was stated in part as follows:

[T]o promote governmental respect for the privacy of citizens by requiring all departments and agencies of the executive branch and their employees to observe certain constitutional rules in the ... use, and disclosure of personal information about individuals ...

[T]o prevent ... the wrongful disclosure and use, in some cases, of personal files held by Federal agencies ... [and]

[T]o promote observance of valued principles of fairness and individual privacy by those who ... administer ... institutional and organizational data banks of government and society. Sen.Rep. No. 93–1183 (1974) U.S.Code Cong. & Admin. News 1974, p. 6916 as discussed in Davis, *Administrative Law Treatise*, § 5.43 (2nd ed. 1978).

The Privacy Act does not forbid disclosure of such records in every instance, but rather contains a series of exceptions from the general rule of non-disclosure. Two exceptions are relevant to the issues raised in this action: 5 U.S.C. § 552a(b)(2), which provides that disclosure is allowed if required under Section 552 of this title (The Freedom of Information Act), and 5 U.S.C. § 552a(b)(3) which permits disclosure for a routine use as defined under 5 U.S.C. § 552a(a)(7), and subject to compliance with requirements set forth in 5 U.S.C. § 552a(e)(4)(D).

■ The first exception, stated in 5 U.S.C. § 552a(b)(2), is designed to reconcile competing, and conflicting, policies of Congress embodied in the Freedom of Information Act, and the Privacy Act of 1974. 5 U.S.C. § 552(a) states that agencies must generally make available to the public information contained in their files. Section 552(b) contains various exemptions from disclosure, and includes:

(6) personnel and medical files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy; ... Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.

However, the Freedom of Information Act did not preclude release of such information, but instead gave the agency discretion to withhold personnel files if it chose to do so. *Pennzoil Co. v. Federal Power Commission,* 534 F.2d 627 (5th Cir.1976); *Moore-McCormack Lines, Inc. v. I.T.O. Corp. of Baltimore,* 508 F.2d 945 (4th Cir. 1974). Disclosure by the agency of information exempt from mandatory disclosure under Section 552(b)(6) did not constitute a violation of the Freedom of Information Act. *Id.*

■ The effect of the Privacy Act was to preclude disclosure of some information exempt from mandatory disclosure under the Freedom of Information Act, except under specified circumstances, and thus to remove the agency's discretion to disclose such information when not compelled by the Freedom of Information Act. Davis, *Administrative Law Treatise, supra,* § 5.43 p. 439; *Local 2047, Am. Federation of Government Emp. v. Defense General Supply Center,* 423 F.Supp. 481 (E.D.Va. 1976), *affirmed* 573 F.2d 184 (4th Cir.1978); *DePlanche v. Califano,* 549 F.Supp. 685 (W.D.Mich.1982); *Antonelli v. F.B.I.,* 536 F.Supp. 568 (N.D.Ill.1982), *rev'd on other grounds* 721 F.2d 615 (7th Cir.1983), *cert. denied* — U.S. ——, 104 S.Ct. 2399, 81 L.Ed.2d 355; *Florida Medical Ass'n, Inc. v. Dept. of Health, Education and Welfare,* 479 F.Supp. 1291 (M.D.Fla.1979); *Lovell v. Alderete,* 630 F.2d 428 (5th Cir. 1980); *Brown v. Federal Bureau of Investigation,* 658 F.2d 71 (2nd Cir.1981). The proper analysis under Section 552a(b)(2) utilizes the standards developed under the Freedom of Information Act in determining whether disclosure is mandatory, or whether the information is exempt under Section 552(b)(6). *Rose v. Department of Air Force,* 495 F.2d 261 (2nd Cir.1974), *affirmed* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).

■ Although a document contains information the release of which would constitute a clearly unwarranted invasion of personal privacy, still the agency must attempt to segregate and release non-sensi-tive or purely factual portions of the document. *Environmental Protection Agency v. Mink,* 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Rose v. Department of Air Force, supra; Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 *on remand* 383 F.Supp. 1049 (D.D.C.1974); *Ethyl Corporation v. Environmental Protection Agency,* 478 F.2d 47 (4th Cir. 1973). If the exempt materials are inextricably intertwined with the non-exempt materials, the entire document is exempt from mandatory disclosure under the Freedom of Information Act, and disclosure is precluded by the Privacy Act. *Neufeld v. Internal Revenue Service,* 646 F.2d 661 (D.D.C.1981); *Mead Data Cent, Inc. v. U.S. Dept. of Air Force,* 566 F.2d 242 (D.C.Cir.1977); *Long v. U.S. Internal Revenue Service,* 596 F.2d 362 (9th Cir.1979), *cert. denied* 446 U.S. 917, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980); *Sealand Terminal Corp. v. N.L.R.B.,* 414 F.Supp. 1085 (S.D. Miss.1976). The information in the numerical ratings pertaining to plaintiffs is sensitive, but deletion of any identifying information in this portion of the reports would be a simple procedure, and then disclosure would not violate any person's privacy interests. Where, as here, identification is possible based upon the information released, a violation of the subject's privacy interests occurs. The information in the narrative sections of the reports is such that identifying information would normally be so inextricably intertwined with other materials that segregation is not reasonably possible, and it should be expected that release of any meaningful part of this portion of the reports will enable identification of the subject, and will result in an invasion of the privacy interests of the subject in the context of a relatively small facility such as the Medical Center.

■ In determining whether a violation of personal privacy is clearly unwarranted, the agency, and the Court, must balance the interests of the subject in personal privacy against the competing interests of the party requesting the informa-

tion in having access to agency documents. *Rose v. Department of Air Force, supra; Campbell v. United States Civil Service Commission,* 539 F.2d 58 (10th Cir.1976); *Chamberlain v. Kurtz,* 589 F.2d 827 (5th Cir.1979), *cert. denied* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54; *Weahkee v. Norton,* 621 F.2d 1080 (10th Cir.1980). Each case must be determined based upon its own facts. *Cohen v. E.P.A.,* 575 F.Supp. 425 (D.D.C.1983); *Schonberger v. Nat. Transp. Safety Bd.,* 508 F.Supp. 941 (D.D.C.1981). Both the agency, and the Court *de novo,* must balance these interests. It is error for the agency to fail to engage in this sort of analysis before determining whether or not to release the information. *Disabled Officer's Ass'n v. Rumsfeld,* 428 F.Supp. 454 (D.D.C.1977); *Sears, Roebuck Co. v. General Services Admin.,* 553 F.2d 1378 (D.C.Cir.1977) *cert. denied* 434 U.S. 826, 98 S.Ct. 74, 54 L.Ed.2d 84; *People of the State of Ill. v. United States,* 668 F.2d 923 (7th Cir.1981) *cert. denied* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982); *Judiciary Committee of General Assembly v. Freedom of Information Com'n,* 39 Conn.Sup. 176, 473 A.2d 1248 (1983). With a request for multiple documents the balancing must be made in relation to each document on an individual basis. *American Civil Liberties Union v. Brown,* 609 F.2d 277 (7th Cir.1979), *on rehearing en banc* 619 F.2d 1170 (1980). The enactment of the Privacy Act did not alter this analysis, which still must be followed in determining whether any given document falls within the exemption of Section 552(b)(6). *Sears, Roebuck Co. v. General Services Agency, supra.*

 In balancing the competing interests, the Court must consider a variety of factors, including the following: (A) The type of record requested, and the type of information it contains; (B) Potential for harm in any subsequent, non-consensual disclosure; (C) Injury from disclosure to the relationship in which the record was generated; (D) Adequacy of safeguards to prevent unauthorized disclosure; (E) Degree of need for disclosure, including any express statutory mandate; and, (F) Any

articulated public policy, or other recognizable public interest affected by disclosure or nondisclosure of the information. *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 578 (3rd Cir.1980).

The records requested contain very sensitive information, and the violation of plaintiffs' privacy interests was substantial. The evidence shows that plaintiffs suffered embarrassment and anxiety as a result of subsequent non-consensual disclosures. Clearly, the safeguards utilized to prevent disclosure beyond disclosure to the Union were inadequate. Non-consensual disclosures to other persons were foreseeable at the time the information was released to the Union. The disclosure substantially harmed the relationship between subjects of reports and those conducting performance evaluations, and chilled communications in a relationship in which candor and confidence are essential.

Although it is possible that the Union's need for this sort of information could be substantial under other circumstances, the record shows that its interest in disclosure in this case was minimal. Mrs. Sanchez was on a general fishing expedition, which may have been motivated by spite or anger resulting from her own failure to obtain a requested promotion. The information was not needed to process any pending grievances. It was never used by the Union in representing the interests of the nurses employed at the Medical Center. While public policy favors the collective bargaining process, this interest was not substantially forwarded by disclosure under the facts of this case, and it must be balanced against the Congress' policy of protecting the privacy interests of plaintiffs as embodied in the Privacy Act and its legislative history. The balance in this case falls clearly against disclosure. The release of the proficiency reports to Mrs. Sanchez, in those instances where there was inadequate sanitization, constituted a clearly unwarranted invasion of the privacy interests of the subjects. Disclosure was not compelled by the Freedom of Information Act, and therefore release of this information

violated plaintiffs' rights under the Privacy Act.

▮ Defendants' continued reliance upon the holding in *Clemins v. U.S. Dept. of Treasury, I.R.S.,* 457 F.Supp. 13 (D.D.C. 1977) is misplaced. The Court in its Order on Motion to Dismiss or for Summary Judgment dated May 6, 1985 discussed in detail the holding in *Clemins,* and need not reiterate that analysis here. *Clemins* involved non-sensitive information relating to only a few successful candidates for promotions sought by a union in relation to a pending grievance on behalf of non-successful candidates, rather than a broad request for information relating to all of the employees in a specified category employed by the agency. The Court denied disclosure of similar information relating to unsuccessful candidates unless all identifying information could be deleted, and refused disclosure in one instance because the identity of the subject of the report was known. *Clemins* supports the plaintiffs' position that the proficiency reports in this case should not have been disclosed due to inadequate sanitization, and also indicates that the information could have been disclosed without violating the Privacy Act had the agency exercised greater care in sanitizing the reports, for example by deleting the narrative portions of the reports and replacing these with paraphrased summaries which omit any means of identifying the subject. The information in these proficiency reports was exempt from disclosure under Section 552(b)(6), and disclosure was not allowed by Section 552a(b)(2).

▮ 5 U.S.C. § 552a(a)(7) defines a "routine use" as "the use of such record for a purpose which is compatible with the purpose for which it is collected." Section 552a(e)(4) provides, in part, that:

Each agency that maintains a system of records shall—....

(4) Subject to the provisions of paragraph (ii) of this subsection, publish in the Federal Register upon establishment or revision a notice of the existence and character of the system of records, which notice shall include ...

(D) each routine use of the records contained in the system, including the category of users and the purpose of such use....

In order to qualify any use as a routine use under the Privacy Act the agency is required to comply with the provisions mandating that such uses be published in the Federal Register. *Parks v. United States Internal Revenue Service,* 618 F.2d 677 (10th Cir.1980); *Ryan v. Department of Justice,* 595 F.2d 954 (4th Cir.1979); *Exner v. Federal Bureau of Investigation,* 612 F.2d 1202 (9th Cir.1980); *Zeller v. United States,* 467 F.Supp. 487 (E.D.N.Y.1979). In keeping with Congress' policies embodied in the Privacy Act and its legislative history, the agency should narrowly define routine uses, and permit disclosure only when justified by a substantial public interest. *Local 2047 Am. Federation of Government Emp. v. Defense General Supply Center, supra.* Any regulations enacted under the Privacy Act must be consistent with its purposes, and inconsistent regulations are invalid, and will not justify release of covered information. *Id. Parks v. United States Internal Revenue Service, supra. Wisdom v. Dept. of Housing Urban Development,* 713 F.2d 422 (8th Cir. 1983), *cert. denied* — U.S. —, 104 S.Ct. 1272, 79 L.Ed.2d 678; *DePlanche v. Califano, supra. Saunders v. Schweiker,* 508 F.Supp. 305 (W.D.N.Y.1981); *Florida Medical Ass'n, Inc. v. Dept. of Health, Education and Welfare, supra.* In construing regulations, the Court should narrowly interpret routine uses, pursuant to Congress' intent, and in order to preserve the validity of the regulations. *Stiles v. Atlanta Gas Light Co.,* 453 F.Supp. 798 (N.D.Ga.1978). Furthermore, though a union represents the subject of the document, still it is not entitled to any information in the employee's files based upon that status alone, or based upon any provision contained in the collective bargaining agreement, since the terms of the regulations, and of the statute, control access to such records. *Am. Federation Government Emp. v. Defense General Supply Center,*

*supra.* Any release made in reliance upon a routine use, as defined in the applicable regulations, must be for reasons consistent with the reasons stated in the rule. *Exner v. Federal Bureau of Investigation, supra; Alford v. Central Intelligence Agency,* 610 F.2d 348 (5th Cir.1980) *cert. denied* 449 U.S. 854, 101 S.Ct. 150, 66 L.Ed.2d 68, *reh'g denied* 449 U.S. 1027, 101 S.Ct. 597, 66 L.Ed.2d 488. Furthermore, Section 552a(b)(3) *permits* disclosure of sensitive information, rather than compels it, and the court should still balance the competing interests of the parties in determining whether the release was an abuse of discretion under the circumstances.

The American Federation of Government Employees, in its amicus brief, argues that the release in this action was for a routine use and relies upon regulations of the Office of Personnel Management published at 47 F.R. 16,489 et seq. (April 16, 1982). Such regulations govern maintenance and use of official personnel files of agencies of the United States, including "Records that are performance-related, including: appraisal forms and supporting documentation issued under OPM approved employee ... approval systems ...". 47 F.R. 16,490 column 2, paragraph k. The regulations go on to define routine uses, stating that: "These records and information in these records may be used: ... j. To disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 *when relevant and necessary to their duties* of exclusive representation concerning personnel policies, practices, and matters affecting work conditions." 47 F.R. 16,490–16,491. (Emphasis added).

■■■■ No testimony or evidence was submitted to establish that these particular records were kept under an OPM approved employee approval system, or otherwise fell within the parameters of the cited regulations. However, assuming these records are covered by the OPM regulations, still the union ignores the limiting language requiring the union to establish the records are relevant and necessary to performance of its duties as the exclusive

bargaining agent of the registered nurses employed at the Medical Center. In effect the union and the defendant argue this regulation eviscerates completely the protections of the Privacy Act to the extent the information is requested by the subject's bargaining agent. The language of the regulations, and the principles of law discussed above prevent such an interpretation of the regulation, and the agency's position is clearly erroneous. The union is not entitled to receive any and all information contained in the relevant personnel files in every instance. To justify its request, the union must, under the regulations, be prepared to make an initial showing that it has a specific need for the information, and that the information is germane to a specific pending or contemplated grievance or other union activity. No such showing or justification was made in this case, and the overbroad, general, and undefined request made by Mrs. Sanchez was inadequate to justify release under these regulations.

■■■■ The danger of disclosure made pursuant to such an ill-defined request is apparent on the facts of this case. The information released was never used in any manner to assist plaintiffs, or the other nurses at the Center or to improve their working conditions. Rather plaintiffs' personal privacy was adversely affected, and no countervailing benefit was reaped by anyone. The limiting language in the regulations was designed to prevent this sort of occurrence, and the damage done could have readily been avoided had the regulations been followed as written. The release of the information in this case cannot be justified as being a routine use under Section 552a(b)(3) or OPM regulations. Therefore, the release to Mrs. Sanchez constituted a violation of plaintiffs' rights under the Privacy Act. Moreover, even if the disclosure could be justified as a routine use, still release on the facts of this case constituted an abuse of discretion by the defendant, since it failed to give adequate weight to, or even to consider, plaintiffs' private interests.

■ In addition, Ms. Gilligan's belief that disclosure was required by 5 U.S.C. § 7114(b)(4) was erroneous. Such statute provides:

The duty of the agency and an exclusive bargaining representative to negotiate in good faith under subsection (a) of this section shall include the obligation—

. . . .

(4) In the case of an agency, to furnish to the exclusive representative involved, or its authorized representative, upon request and, *to the extent not prohibited by law,* data—

(A) Which is normally maintained by the agency in the regular course of business; [and]

(B) Which is reasonably available and necessary for full and proper discussion, understanding and negotiation of subjects within the scope of collective bargaining. (Emphasis added)

Disclosure was in fact prohibited by law. Disclosure was not mandated by this Section under the circumstances of this case.

■ The union also argues that this action should be dismissed because plaintiffs failed to join the union as a co-defendant, and an indispensable party to this action. Both the Freedom of Information Act and the Privacy Act govern the conduct of Federal agencies. Neither provides a right of action against any other person or entity. *Parks v. United States I.R.S., supra,* 618 F.2d at p. 684; *Bruce v. United States,* 621 F.2d 914 (8th Cir.1980); *Brown-Bey v. United States,* 720 F.2d 467 (7th Cir.1983); *Windsor v. The Tennessean,* 719 F.2d 155 (6th Cir.1983), *rehearing denied* 726 F.2d 277 *cert. denied* — U.S. —, 105 S.Ct. 105, 83 L.Ed.2d 50. A union lacks standing to assert claims under either Act on behalf of its members. *Id.* Thus, this argument lacks merit. Had plaintiffs joined the union as a defendant in this action it would have been summarily dismissed, since no claim could be asserted against the union under either statute. Therefore, it was not an indispensable party to this action.

■ Plaintiffs cannot recover injunctive relief under the Privacy Act based upon the allegations asserted herein. *Parks v. United States I.R.S., supra,* 618 F.2d at p. 684; *Edison v. Department of the Army,* 672 F.2d 840 (11th Cir.1982); *St. Michael's Convalescent Hospital v. State of Cal.,* 643 F.2d 1369 (9th Cir.1981); *Cell Associates v. National Institutes of Health,* 579 F.2d 1155, 1158–60 (9th Cir. 1978). 5 U.S.C. § 552a(g) provides, in part:

(1) Whenever any agency. . . .

(d) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection. . . . .

(4) In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the Court determines that the agency acted in a manner which was intentional or willful, the United States [shall] be liable to the individual in an amount equal to the sum of—

(A) actual damages sustained by the individual as a result of the refusal or failure, *but in no case shall a person entitled to recovery receive less than the sum of $1,000;* and

(B) the costs of action together with reasonable attorney fees as determined by the Court. (Emphasis added).

Emotional trauma, though unaccompanied by pecuniary loss, is adequate to establish an "adverse effect" giving a plaintiff standing to sue under these provisions. *Parks v. United States I.R.S., supra,* 618 F.2d at pp. 682–83; *Albright v. United States,* 732 F.2d 181 (D.C.Cir.1984); *Johnson v. Department of Treasury, I.R.S.,* 700 F.2d 971 (5th Cir.1983); *Fitzpatrick v. Internal Revenue Service,* 665 F.2d 327 (11th Cir.1982).

■ Although there is some authority stating that a plaintiff may not recover actual damages for such injury under the Privacy Act, plaintiffs herein seek only the

minimum damages amount of $1,000.00, and have not attempted to substantiate any entitlement to a greater amount. That is much more than this Court thinks is warranted here, but Congress, not this Court, has set that amount. Therefore, the plaintiffs may recover this amount, even in the absence of proof of pecuniary loss. *Parks v. United States I.R.S., supra; Johnson v. Department of Treasury, I.R.S., supra; Fitzpatrick v. Internal Revenue Service, supra.* Nor is proof of premeditation required for an intentional or willful violation within the meaning of the Privacy Act. *Parks v. United States I.R.S., supra,* 618 F.2d at p. 683. *Chapman v. National Aeronautics and Space Administration,* 736 F.2d 238 (5th Cir.1984)); *Chocallo v. Bureau of Hearings and Appeals, SSA,* 548 F.Supp. 1349 (E.D.Pa.1982) *affirmed without opinion* 716 F.2d 889 (3rd Cir. 1983), *cert. denied* — U.S. ——, 104 S.Ct. 426, 78 L.Ed.2d 360.

Plaintiffs Durham, Fox, Griffin, Grubb, Holmes, Hoppe, Deloris O'Brien, Russell, Scherr, Toulouse, Ingle, Carolyn O'Brien, Shader and Smith were each adversely affected due to defendant's violation of their rights under the Privacy Act, and are entitled to recover damages in the amount of $1,000.00 each, as well as their costs of action. Plaintiffs have substantially prevailed on the merits, and are entitled to recover a reasonable attorneys fee, which the Court finds to be $5,000.00. *Exner v. Federal Bureau of Investigation, supra.* Judgment will be entered in compliance with these Findings of Fact and Conclusions of Law.