**Peter F. MOSKIEWICZ and Jo Ann Moskiewicz, Plaintiffs-Appellants,**

**v.**

**UNITED STATES DEPARTMENT OF AGRICULTURE and Farmers Home Administration, Defendants-Appellees.**

**No. 85–1892.**

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 30, 1985.

Decided May 23, 1986.

Leslie F. Kramer, Antoniewicz, Gregg & Rona, Madison, Wis., Charles S. Senn, Thorp, Wis., for plaintiffs-appellants.

John R. Byrnes, U.S. Atty., Madison, Wis., for defendants-appellees.

Before COFFEY, Circuit Judge, RIPPLE, Circuit Judge, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

Plaintiffs Peter and Jo Ann Moskiewicz appeal a ruling of the U.S. District Court

---

\* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

for the Western District of Wisconsin which granted in part a motion for summary judgment in favor of defendants U.S. Department of Agriculture and the Farmers Home Administration (FmHA). The district court concluded the plaintiffs had brought two causes of action under the Privacy Act (the Act), 5 U.S.C. § 552a, *et seq.* In essence, defendants filed motions for summary judgment attacking both causes. The district court granted defendants' motion as to the first cause yet ruled for plaintiffs on the second.

This litigation arose because plaintiffs' application for an emergency economic loan under the Emergency Agriculture Credit Adjustment Act of 1978 [1] was rejected by the FmHA. In plaintiffs' first cause of action plaintiffs alleged the FmHA, an agency for purposes of the Privacy Act, violated 5 U.S.C. § 552a(g)(1)(C) because it failed, as the relevant part of that statute reads:

> ... to maintain any record concerning any individual with such accuracy, ... as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual;

Further, plaintiffs asked for damages under 5 U.S.C. § 552a(g)(4) of the Privacy Act, by properly asserting FmHA officials "willfully and intentionally" maintained the allegedly inaccurate information. 5 U.S.C. § 552a(g)(4) states:

> (4) In any suit brought under the provisions of subsection (g)(1)(C) of (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—
> (A) actual damages sustained by the individual as a result of the refusal or

failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
> (B) the costs of the action together with reasonable attorney fees as determined by the court.

In plaintiffs' second cause of action, as delineated by the district court, plaintiffs sought to have the allegedly inaccurate records amended according to the provisions set forth in 5 U.S.C. § 552a(g)(1)(A) and (g)(2). The district court decided to rule on plaintiffs' second cause of action first, reasoning that if there was no genuine issue of material fact which would lead one to conclude plaintiffs' records deserved to be judicially amended, then there could be no genuine issue as to whether FmHA officials willfully and intentionally maintained inaccurate records for the purposes of damages.[2] The district court concluded that plaintiffs' proposed amendments to their application, while based on dubious assumptions, would indeed produce figures on their application which would generate the positive cash flow necessary to secure the emergency loan. The district court stated while it doubted plaintiffs' figures, they were figures which were computed in a manner open to debate, and therefore the question of their accuracy created issues of fact sufficient to preclude summary judgment. If plaintiffs' figures were ultimately deemed more accurate, it would be the FmHA's inaccurate figures which caused plaintiffs' loan application to be rejected. Hence, plaintiffs' second cause of action, which asked for FmHA's allegedly inaccurate records to be amended, survived this summary judgment stage.

The district court then ruled on plaintiffs' other action which sought damages by alleging defendants willfully and intentionally maintained the allegedly inaccurate records. The district court concluded that assuming *arguendo* the FmHA records

---

**1.** Pub.L. 95–334, Title II, §§ 201–211, Aug. 4, 1978, 92 Stat. 429–433 as amended by Pub.L. 96–220, § 1, Mar. 30, 1980, 94 Stat. 129 (also found immediately preceding 7 U.S.C.A. § 1961.)

**2.** For a similar analysis see *Edison v. Department of the Army,* 672 F.2d 840 (11th Cir.1982) (Wood, J., sitting by designation).

were inaccurate and in need of amendment there was no evidence which could lead a reasonable factfinder to infer defendants willfully and intentionally maintained the inaccurate records within the meaning of the Privacy Act. The district court believed that because the figures used in the application were genuinely debatable (precluding summary judgment on the issue of amending them discussed above) there was no evidence defendants recklessly disregarded the provisions of the Privacy Act by intentionally maintaining inaccurate records. Under a worse case scenario, the district court could conceivably foresee the FmHA as being found negligent in maintaining the figures/records it did. However, negligent behavior was simply not sufficient to recover damages under the Privacy Act's "willful and intentional" violation provision. In sum, the district court granted defendant FmHA's motion for summary judgment on the damages issue, yet let the issue as to whether plaintiffs' records merited amending survive the summary judgment stage. We note subsequent to these events both parties stipulated to voluntary dismissal with prejudice to plaintiffs' second cause of action which sought that the records be amended. With the dismissal of plaintiffs' second cause of action, the district court's granting of defendants' summary judgment on the first cause became a final appealable order and we now have jurisdiction under 28 U.S.C. § 1291.

The issue on appeal is whether the district court erred in ruling there was no evidence defendants intentionally or willfully violated the Privacy Act. What type of behavior constitutes an intentional and willful violation has been the subject of significant debate among the courts in recent years. The most popular explanation, used as a starting point by the majority of courts, comes from the legislative history entitled "Analysis of House and Senate Compromise Amendments to the Federal Privacy Act," to be found at 120 Cong.Rec. 40405, 40406 (1974):

In a suit for damages, the [compromise] amendment reflects a belief that a finding of willful, arbitrary or capricious action is too harsh a standard of proof for an individual to exercise the rights granted by this legislation. Thus the standard for recovery of damages was reduced to "willful or intentional" action by an agency. On a continuum between negligence and the very high standard of willful, arbitrary, or capricious conduct, this standard is viewed as only somewhat greater than gross negligence.

Having initially identified the standard for recovery of damages as conduct constituting something "greater than gross negligence" courts have struggled to determine what specific actions on the part of government officials could meet the standard. A seminal case which discussed the application of the greater than gross negligence standard to specific conduct was *Parks v. United States Internal Revenue Service*, 618 F.2d 677 (10th Cir.1980). In *Parks* plaintiffs, employees of the Internal Revenue Service, claimed their employer wrongfully surveyed their personnel files to ascertain whether they had purchased U.S. Savings Bonds (in violation of 5 U.S.C. § 552a(b)(1) and (3)). Having decifered plaintiffs had not purchased bonds, the IRS included their names in a telephone campaign conducted by non-supervisory employees to solicit bond purchases. Plaintiff sought damages based on psychological harm from the unauthorized disclosure of their records. The government claimed defendants had failed to allege a willful and intentional violation of the Act. The *Parks* court ruled while it did not appear proof of premeditated malice was required to meet the "willful and intentional" conduct standard under the Privacy Act, defendants' publishing of the information to IRS employees in this instance for the use of soliciting bond sales fell short of conduct worthy of damages (greater than gross negligence) under the "willful and intentional" provision of the Privacy Act. While the denunciation of a requisite finding of premeditated malice helped further define "willful and intentional" conduct under the Act, other courts still grappled to fit the

language/standard into their circumstances.

In *South v. Federal Bureau of Investigation*, 508 F.Supp. 1104 (N.D.Ill.1981) Judge James Moran conducted a general survey of definitions and standards concerning "intentional and willful" conduct. He quoted Black's Law Dictionary as defining these terms by referring to "conscious," "knowing" and "designed" acts of behavior. However, Judge Moran noted that the emphasis could shift, depending on the area of the law. For example, in securities law, a "recklessness" standard was considered desirable to employ, and "violations were found where the defendant proceeded in apparent disregard of or with *reckless* indifference to a known obligation or set of facts." (citing *Wasson v. SEC*, 558 F.2d 879, 882 (8th Cir.1977)) (emphasis added). Judge Moran cited the Ninth Circuit in *Sorenson v. United States*, 521 F.2d 325 (9th Cir.1975) as defining willful conduct in terms of recklessness—a "reckless disregard for obvious risks." The Seventh Circuit has similarly endorsed a "recklessness" test on past occasions (see *Sundstrand v. Sun Chemical Corp.*, 553 F.2d 1033 (7th Cir.1977)). Hence, elements of recklessness often have been a key characteristic incorporated into a definition of willful and intentional conduct.

Judge Moran was forced to conclude that, "Judicial interpretations of the intentional and willful standard under the Privacy Act are sparse." See 508 F.Supp. at 1107. However, with that in mind he formulated a standard based on several authorities. As a starting point he referred to the "greater than gross negligence" standard/language mentioned in legislative history from the Congressional Record. To this base he added two other factors to be considered: a "recklessness factor," traditionally endorsed in cases such as *Sorenson, Wasson* and *Sundstrand,* supra and a "scienter factor" or requirement of "knowing conduct". The scienter factor, the idea one should realize he is violating the Act, derives from a line of cases such as *Bruce v. United States*, 621 F.2d 914 (8th Cir. 1980) (although see also *Wasson,* supra).

In *Bruce* it was deemed that a governmental employee who violated the Act simply by following unchallenged regulations of a governmental agency could not be accused of willful and knowing violations of the Act. The scienter factor has recently been emphasized in a lead case addressing this issue, *Albright v. United States*, 732 F.2d 181 (D.C.Cir.1984). In *Albright* it was stated:

> ... the "intentional or willful" action requirement of Section 552a(g)(4) refers only to the intentional or willful failure of the agency to abide by the Act, and not to all voluntary actions which might otherwise inadvertently contravene one of the Act's strictures. Section 552a(g)(4) imposes liability only when the agency acts in violation of the Act in a willful or intentional manner, either by committing the act without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act. *Id.* at 189.

We conclude evidence of conduct which would meet a greater than gross negligence standard, focusing on evidence of reckless behavior and/or knowing violations of the Act on the part of the accused, must be advanced by a claimant at the summary judgment stage in order to maintain a civil action for damages under the Privacy Act.

Turning to the case at bar, we agree with the district court that plaintiffs have failed to advance sufficient evidence to create a genuine issue of material fact as to whether defendants' conduct could constitute "willful and intentional" behavior for purposes of maintaining an action for damages under the Privacy Act. Surveying the record we do not find defendants' actions as so reckless as to meet the greater than gross negligence standard. We also do not find evidence of a knowing violation of the Privacy Act by defendants within the meaning of the caselaw cited above. We believe the district court's dismissal of the damages action at the summary judgment stage appropriate.

Plaintiffs assert that data relevant to their economic emergency loan were "ignored, erroneously used, construed or applied incorrectly, or not adequately verified." (Plaintiffs' brief p. 17.) They also claim defendants "intentionally and willfully refused to correct and/or verify whether the facts they were relying on were accurate." (Plaintiffs' brief p. 19.) We find there were legitimate disagreements between the parties on the data that should be used but that the facts and figures adopted by the defendants were reasonably relied upon. Defendants' reasonable reliance on facts and calculations in an area admittedly open to debate amounted to (at worst) negligence. In no way does it constitute reckless or knowing conduct which could be deemed equivalent to a greater than gross negligence standard.

For example, plaintiffs maintain if defendants used the figures plaintiffs proposed for their loan application, they could generate a positive cash flow. Plaintiffs justify their figures by proposing to "cash-crop" oats. Plaintiffs claim they are capable of yielding 65 bushels of oats per acre as a cash crop, a yield figure plaintiffs deem reasonable and one supported by an affidavit of Roger Smith, Manager of Wisconsin Foundation Seeds. Plaintiffs further claim they in fact cash-cropped oats in 1975 at a rate of 60 bushels per acre. Defendants maintain plaintiffs' figures based on cash-cropping oats are excessive and that cash-cropping oats at plaintiffs' farming location is unrealistic. Defendants claim the maximum amount of oats capable of being yielded is 50 bushels per acre. Defendants used this figure on plaintiffs' application and it generated lower cash flow projections from plaintiffs' farm and triggered a denial of the emergency loan. Defendants admit the 50 bushels per acre is based on oats raised in Clark County, Wisconsin as a nursery crop (as opposed to cash crop).[3] However, defendants maintain conditions for cash-cropping oats in Clark County, Wisconsin, where plaintiffs'

farm was located, are unsuitable. This view is shared by the Clark County FmHA committee, composed of local farmers. Defendants further note its projected oat yield of 50 bushels per acre is based on a figure representing the approximate average oats yield per acre in Clark County over 10 years prior to 1980.

The point for our purposes (or the district court) is not which side was right. The point is both parties have legitimate evidence which could honestly lead them to conclude, with all due respect, that their positions are correct. Defendants' usage of its figures, despite evidence submitted by plaintiffs' doubting their accuracy, does not amount to gross negligence or reckless behavior. The accurateness of plaintiffs' yield figures for cash-cropping oats does not appear as inherently reliable as plaintiff suggests. Both sides have evidence supporting their positions and at best it appears plaintiffs' ability to cash-crop oats successfully at the rate they project is legitimately debatable. This is far short of the "willful and intentional" violation (or greater than gross negligent conduct) necessary to maintain an action for damages under the Privacy Act.

The remainder of plaintiffs' complaints about defendants' "behavior" in its selection of statistics to determine their loan qualifications concern issues which are legitimately debatable and constitute honest disputes. For example, plaintiffs deny they had a generally poor farming record. They explain their poor performance for the past two years before their loan application on bad weather conditions, which they say plagued all local farmers. Defendants maintain, nonetheless, that the fact remains plaintiffs had an unfavorable rating for cash-cropping peas and sunflowers during that time period. Plaintiffs also assert their estimated oat cash-cropping yields were based on their actual experience and point to the Roger Smith affidavit as supportive evidence. In fact, they claim

3. Cash crops are harvested and sold, nursery crops are planted to protect another growing crop and produce lower yields per acre.

in their reply brief defendants specifically lent them money to cash-crop oats. Defendants, in rebuttal, insist there is no history of defendant cash-cropping oats and that the supportive Smith affidavit was executed after the FmHA appeal procedure was exhausted. They further assert Smith's yield figures are based on experimental studies, not actual field conditions. Finally, plaintiffs believe the costs to cash-crop oats, factored into their application by the FmHA, are inflated as evidence by FmHA's allegedly erroneous assumption they would need to purchase significant amounts of lime for their fields. In reply defendants insist plaintiffs would need the lime. These judgment calls or honest disputes are insufficient to maintain an action for damages under the Privacy Act. We cannot conclude the FmHA knowingly and recklessly maintained its records and subsequently rejected plaintiffs' application in a grossly negligent manner subjecting the agency to an action for damages. We agree with the district court there is nothing in the record which could lead a reasonable factfinder to conclude this was the case.

Plaintiffs assert that dismissing the damages portion of the suit at the summary judgment stage was inappropriate because the issues of the intent or motive of FmHA officials are best left for trial. While this general rule should not be minimized, it is not without exceptions. We note courts have demonstrated a willingness to rule on issues of intent and motivation at the summary judgment stage in Privacy Act cases. For example, the case of *Perry v. Block*, 684 F.2d 121 (D.C.Cir.1982) represents another Privacy Act claim against defendant FmHA that was dismissed at the summary judgment stage and there were broad issues of intent and motive alleged by plaintiff there. Another example can be found in the case of *Doe v. General Services Administration*, 544 F.Supp. 530 (D.C.Md. 1982) where the government's motion for summary judgment was granted as to Doe's claim for damages under the Privacy Act. The district court in *Doe* believed it had enough facts at the summary judg-

ment stage to determine government employees were acting in good faith when they released the psychiatric records at issue. Hence, it is not necessarily inappropriate to decide issues of defendants' motivations and intent at this juncture and we believe the district court did not abuse its discretion in this instance. This is because the plaintiffs have failed to produce evidence in the record raising a material question of fact regarding the intentional and willful nature of the defendants' actions even if one views the evidence in a light most favorable to plaintiffs.

The decision of the district court is hereby AFFIRMED.